IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RONNIE D. WEST, | ) | 8:12CV273 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JUDGE ELIZABETH | ) | |
| CRNKOVICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

    This matter is before the court on several Motions filed by the parties. (Filing Nos. 6, 9, 11, 13, 16, 17, 20, 23, 29, and 31.) As set forth below, this matter is dismissed without prejudice.

## I. BACKGROUND

    Plaintiff filed his original Complaint in this matter on August 3, 2012, against the Nebraska Department of Health and Human Services ("NDHHS"), the State of Nebraska, the City of Omaha, Douglas County, Nebraska ("Douglas County"), and nine individuals. (Filing No. 1 at CM/ECF pp. 1-3.) Plaintiff currently resides in Batesville, Arkansas. (*Id*. at CM/ECF p. 2.)

    Condensed and summarized, Plaintiff alleges Defendants' actions during events related to a state-court child custody dispute between Plaintiff, the State of Nebraska and Plaintiff's former wife Julia West, violated his civil rights. (*Id*. at CM/ECF pp. 1-19.) Plaintiff alleges that pursuant to a court order, his children were "kidnapped" and "illegally and unconstitutionally renditioned to a fringe organization known as Project Harmony where they were threatened and intimidated into making false statements about" Plaintiff. (*Id*. at CM/ECF p. 6; *see also* Filing No. 28 at CM/ECF p. 9.) Plaintiff also asserts that a ruling by Defendant Judge Wadie Thomas

placing his children in temporary foster care violated his constitutional rights. (Filing No. 1 at CM/ECF pp. 7-8.) Plaintiff seeks monetary damages from Defendants in the amount of $100,000,000.00, as well as "attorney's fees and costs." (*Id*. at CM/ECF p. 18.)

After filing his Complaint and attempting service of process, Defendants David Weir ("Weir"), Timothy Burns ("Burns"), Douglas County, Angie Hurly ("Hurly"), Susan Stovall ("Stovall"), Grant Forsberg, and Julia West all filed Motions to Dismiss. (Filing Nos. 6, 9, 11, 13, 16, and 17.) In response, Plaintiff filed a document labeled "Jury Demand" (filing no. 19), a second document labeled "Jury Demand" (filing no. 28), a Motion for Default Judgment (filing no. 20), and a Motion for Admittance of Supplemental Pleading (filing no. 23).

Defendants Weir, Burns, Douglas County, Hurly, and Stovall have all filed Briefs in Opposition to Plaintiff's Motion for Default Judgment. (Filing Nos. 21, 22, and 24.) Defendants Hurly and Stovall have additionally asked that the court rule on their pending Motions to Dismiss before allowing Plaintiff to amend his Complaint. (Filing No. 22 at CM/ECF p. 3.) Also pending is Defendant Jessica Brown's ("Brown") Motion to Dismiss and Plaintiff's Motion to Set Discovery Calendar. (Filing Nos. 29 and 31.)

## II. ANALYSIS

### A. Plaintiff's Amended Complaint and Motion for Admittance of Supplemental Pleading

On November 7, 2012, Plaintiff filed a document labeled "Jury Demand." (Filing No. 19.) Seven days later, Plaintiff filed another document labeled "Jury Demand." (Filing No. 28.) On November 16, 2012, Plaintiff filed a Motion for Admittance of Supplemental Pleading. (Filing No. 23.) In his Motion for Admittance

2

of Supplemental Pleading, Plaintiff seeks the court's leave to file a "supplemental" pleading that he "offered" as "evidence" with his motion. (*Id*. at CM/ECF p. 4.) However, Plaintiff failed to attach a "supplemental" pleading to his Motion. (*See* Docket Sheet.) Liberally construed, Plaintiff may be requesting the court's leave to file the second "Jury Demand" document as an Amended Complaint. (*Id*.)

To the extent that the court chooses to liberally construe the "Jury Demand" documents as amended complaints, Defendants Hurly and Stovall have asked the court to rule on their pending Motions to Dismiss before allowing amendment. (Filing No. 22 at CM/ECF p. 3.) Defendants Hurly and Stovall argue that they have not been properly served, and therefore, Plaintiff should not be permitted to amend his Complaint.

Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should freely give a party leave to amend when justice so requires. The applicable standard is summarized in *Foman v. Davis*, 371 U.S. 178, 182 (1962), which states:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent reason-such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be freely given.

*Id.* (internal quotations omitted). Further, a motion to amend a complaint "render[s] moot" a pending motion to dismiss. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002).

The court has carefully reviewed Plaintiff's Motion for Admittance of Supplemental Pleading, as well as Hurly and Stovall's request. To the extent that

Plaintiff filed his Motion for Admittance of Supplemental Pleading in an effort to request the court's leave to file his second "Jury Demand" document as an Amended Complaint, his Motion is granted. Further, the court will consider his Amended Complaint (filing no. 28) as supplemental to, rather than superseding, his original Complaint. *See* NECivR 15.1(b) (stating that the court may consider a pro se plaintiff's amended pleading "as supplemental to, rather than as superseding, the original pleading").

To the extent that Plaintiff filed his Motion for Admittance of Supplemental Pleading in an effort to request the court's leave to file a "supplemental" pleading that he did not attach to his Motion, his Motion is denied. Defendants' Motions to Dismiss filed prior to Plaintiff's Amended Complaint are denied as moot.

### B. Motion to Dismiss Standard

A pro se plaintiff must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed" for failing to state a claim upon which relief can be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Regardless of whether a plaintiff is represented or is appearing pro se, the plaintiff's complaint must allege specific facts sufficient to state a claim. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985). However, a pro se plaintiff's allegations must be construed liberally. *Burke v. N.D. Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1043–44 (8th Cir. 2002) (citations omitted).

### C.     Plaintiff's Claims and Defendant Brown's Motions to Dismiss

As discussed above, and because Plaintiff amended his Complaint, several of the Motions to Dismiss are now moot. However, Defendant Brown's Motion to Dismiss was filed *after* Plaintiff filed his Amended Complaint. (Filing No. 29.) This Motion is not moot and Defendant Brown even acknowledges Plaintiff's Amended Complaint in her Brief. (Filing No. 30 at CM/ECF p. 3.) In her Brief, Brown argues that Plaintiff's Amended Complaint should be dismissed for, among other reasons, lack of subject matter jurisdiction. (*Id*. at CM/ECF p. 6.) The court will explore the question of subject matter jurisdiction, and other issues, below.

#### 1.     *Abstention & Rooker-Feldman*

In Plaintiff's Amended Complaint, he states that his constitutional and civil rights were violated because he was not allowed any contact with his children from June 2009 to August 2011. (Filing No. 28 at CM/ECF pp. 20-21.) Liberally construed, Plaintiff's claims are brought pursuant to the Fourteenth Amendment. The Fourteenth Amendment protects a parent's liberty interest in the "care, custody, and management of their children." *Manzano v. S.D. Dep't of Soc. Servs.,* 60 F.3d 505, 509-10 (8th Cir. 1995). However, to promote comity between state and federal judicial bodies, federal courts have developed a strong policy against exercising jurisdiction over these matters when state court proceedings have already commenced. *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004). Courts use the doctrine developed in *Younger v. Harris* to carry out this policy. 401 U.S. 37 (1971). Under *Younger*, a federal court should abstain from jurisdiction "'when (1) there is an ongoing state judicial proceeding which (2) implicates important state interests, and when (3) that proceeding affords an adequate opportunity to raise the federal questions presented.'" *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005) (quoting *Fuller v. Ulland*, 76 F.3d 957, 959 (8th Cir.1996)).

Plaintiff's Complaint and Amended Complaint indicate that he is, or has been, involved in state court proceedings regarding the care, custody, and management of his children. (*See* Filing Nos. 1 and 28.) The resolution of child custody matters has been acknowledged as an important state interest. See *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12–13 (2004) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (internal quotation marks omitted)). Moreover, Plaintiff has not alleged, nor demonstrated, that these proceedings do not provide him with the opportunity to raise his Fourteenth Amendment claims.

To the extent that Plaintiff asks this court to review and reverse a state court order, this court lacks subject matter jurisdiction. The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In fact, federal district courts do not have jurisdiction "over challenges to state court decisions . . . even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486; *see also Ballinger v. Culotta*, 322 F.3d 546, 548–49 (8th Cir. 2003) (dismissing claims under *Rooker-Feldman* doctrine where the relief requested in the complaint would effectively reverse or undermine the state court decision or void its ruling and noting that "[f]ederal district courts thus may not 'exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court" (citation omitted)). Put simply, a federal district court does not possess authority in a civil rights case to review or alter a final judgment of a state court judicial proceeding.

In light of these findings, the court will abstain from exercising jurisdiction over Plaintiff's claims related to his child custody dispute.

6

### 2. *Generally Asserted Claims*

In addition to the claims discussed above, Plaintiff has generally asserted federal claims under "42 U.S.C. 1985," "42 U.S.C. 1983," "42 U.S.C. 1981," "CIVIL RICO," "18 U.S.C. 241," "18 U.S.C. 1503," "18 U.S.C. 1512," and the 6th, 1st, and 13th Amendments. (Filing No. 1 at CM/ECF pp. 1-2; Filing No. 28 at CM/ECF pp. 1-2.) Plaintiff has also alleged state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress. (*See* Filing No. 28 at CM/ECF p. 1.)

In her Brief in Support of her Motion to Dismiss, Brown argues Plaintiff's allegations relating to Plaintiff's generally asserted claims are "little more than unadorned, the-defendant-unlawfully-harmed-me accusations that offer 'labels and conclusions' rather than set forth a claim upon which relief can be granted." (Filing No. 30 at CM/ECF p. 17.) The court agrees with Brown.

Although the court can liberally construe Plaintiff's allegations to assert a Fourteenth Amendment claim, the remainder of his allegations amount to insufficient "conclusory statements" and "naked assertion[s] devoid of further factual enhancement." *See Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). Indeed, the majority of Plaintiff's allegations relate directly to his state-court child custody dispute. Even if Plaintiff's allegations could be liberally construed as unrelated to his child custody dispute, his claims fail to state a claim upon which relief may be granted for several other reasons worth discussing.

### a. Sovereign Immunity

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.,* 72 F.3d 615, 619 (8th

7

Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Dover Elevator Co.*, 64 F.3d at 444; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 which seek equitable relief from state employee defendants acting in their official capacity.

Where a plaintiff does not specify the capacity in which a defendant is sued, it is presumed that a defendant is sued in his official capacity only. *See, e.g., Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."). In addition, a claim against an individual, in his official capacity, is in reality a claim against the entity that employs the official. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. . . . A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity. . . . Therefore, the appellants in this case will collectively be referred to as the City.") (quotations omitted). *Accord Eagle v. Morgan*, 88 F.3d 620, 629 n.5 (8th Cir. 1996) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). As such, damages claims against individual state employees acting in their official capacities are also barred by the Eleventh Amendment. *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).

Here, Plaintiff sues the State of Nebraska, the NDHHS and Brown, a caseworker employed by NDHHS, for $100,000,000.00. (Filing No. 1 at CM/ECF pp. 2, 18; Filing No. 28 at CM/ECF pp. 2, 35.) Plaintiff does not specify whether he sues Brown in her individual or official capacity. (*Id*.) Consequently, the court presumes that Brown is sued in her official capacity only. As discussed above, the Eleventh Amendment bars monetary claims against a state, state instrumentalities and employees of a state sued in their official capacities. Therefore, Plaintiff's monetary claims against the State of Nebraska, NDHHS, and Brown are barred by the Eleventh Amendment.

b. Municipal Liability

Plaintiff names Douglas County and the City of Omaha (collectively the "Municipalities) as Defendants in this matter. (Filing No. 1 at CM/ECF p. 1.) As municipalities, Douglas County and the City of Omaha may only be liable under section 1983 if their "policy" or "custom" caused a violation of Plaintiff's constitutional rights. *Doe By & Through Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)).

To establish the existence of a governmental custom, a plaintiff must prove:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

9

>    2)   Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
>    3)   That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe*, 901 F.2d at 646.

Here, Plaintiff does not allege that there is a continuing, widespread, persistent pattern of unconstitutional misconduct by the Municipalities, or their employees, or that the Municipalities' policymaking officials were deliberately indifferent to or tacitly authorized any unconstitutional conduct. (Filing Nos. 1 and 28.) Moreover, Plaintiff does not allege that an unconstitutional custom was the moving force behind his claims. (*Id.*) Accordingly, Plaintiff has failed to allege sufficient facts to "nudge" his federal claims against the Municipalities across the line from conceivable to plausible under the *Jane Doe* standard.

  c.   Judicial Immunity

Judges are absolutely immune from suits for damages arising from acts, whether or not erroneous, in their judicial capacity, as long as such actions were not taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Judicial immunity is an immunity from suit, not just from damages, and "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* Moreover, "[a] judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.* at 12 (quotation omitted). Absolute judicial immunity applies to monetary damages claims only and does not extend to suits

requesting declaratory and prospective injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 536–38 (1984).

As the Supreme Court set forth in *Mireles*, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself,'" and courts "look to the particular act's relation to a general function normally performed by a judge" in determining whether judicial immunity applies. *Mireles*, 502 U.S. at 13. The Eighth Circuit has specifically held that "conducting a trial is a judicial function" for which judges are entitled to absolute immunity. *Hollowell v. Johnson*, 46 F. App'x 388 (8th Cir. 2002) (unpublished).

Here, Plaintiff names two Judges as Defendants: Judge Elizabeth Crnkovich and Judge Timothy Burns. (Filing No. 1 at CM/ECF pp 1-2.) Plaintiff does not specify the capacity in which he sues the Judges and all of his allegations relate to actions taken by the judges in their judicial capacity and within their jurisdiction. Thus, Judge Crnkovich and Judge Burns are entitled to absolute judicial immunity for Plaintiff's monetary damages claims.

    d.  Criminal Statutes

Plaintiff does not have a private right of action under "18 U.S.C. 241," "18 U.S.C. 1503," and "18 U.S.C. 1512." See *United States v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) (stating that "Courts repeatedly have held that there is no private right of action under [18 U.S.C.] § 241"); *Scherer v. United States*, 241 F. Supp. 2d. 1270, 1282 (D. Kan. 2003) (collecting cases in support of dismissing the plaintiffs claimed 18 U.S.C.§ 1503 cause of action pursuant to 12(b)(6)); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538-39 (D. Del. 2009) (collecting cases supporting dismissal of all claims raised under 18 U.S.C.§ 1512 because the statute does not create a private right of action).

11

In sum, the court elects to abstain from exercising jurisdiction over Plaintiff's Fourteenth Amendment claims and any state law claims related to his child custody dispute. The remainder of Plaintiff's allegations fail to state a claim upon which relief may be granted. Accordingly,

IT IS THEREFORE ORDERED that:

1. Plaintiff's Motion for Admittance of Supplemental Pleading (filing no. 23) is granted in part and denied in part in accordance with this Memorandum and Order.

2. Defendants' Motions to Dismiss filed before Plaintiff filed his Amended Complaint (filing nos. 6, 9, 11, 13, 16 and 17) are denied as moot.

3. Defendant Jessica Brown's Motion to Dismiss (filing no. 29) is granted.

4. The court will abstain from exercising jurisdiction over Plaintiff's claims related to his child custody dispute; those claims are dismissed without prejudice to reassertion in the proper forum.

5. Plaintiff's claims asserted pursuant to 18 U.S.C. § 241, 18 U.S.C. § 1503, and 18 U.S.C. § 1512 are dismissed with prejudice.

6. Plaintiff's monetary damages claims against the State of Nebraska, NDHHS, and Brown, in her official capacity, are dismissed with prejudice.

7. Plaintiff's monetary damages claims against Judge Elizabeth Crnkovich and Judge Timothy Burns, for actions taken within their judicial capacity, are dismissed with prejudice.

8.       Plaintiff's remaining claims, unrelated to his child custody dispute, are dismissed without prejudice in accordance with this Memorandum and Order.

9.       Plaintiff's Motion for Default Judgment (filing no. 20) and Motion to Set Discovery Calendar (filing no. 31) are denied as moot.

10.     A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 24th day of May, 2013.

BY THE COURT:

*s/ John M. Gerrard*
United States District Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.